Clark I. Balfour, OSB No. 791529
cbalfour@cablehuston.com
Casey M. Nokes, OSB No. 076641
cnokes@cablehuston.com
CABLE HUSTON BENEDICT HAAGENSEN & LLOYD LLP
1001 SW Fifth Avenue, Suite 2000
Portland, OR  97204-1136
(503) 224-3092 Telephone
(503) 224-3176 Facsimile

    Of Attorneys for Plaintiff
    North Clackamas County Water Commission

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Portland District)

| | |
|---|---|
| NORTH CLACKAMAS COUNTY WATER COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>SIEMENS WATER TECHNOLOGIES CORP., a Massachusetts corporation,<br><br>    Defendant. | Civil No. 3:13-cv-1441<br><br>**COMPLAINT**<br>(Breach of Contract; Breach of Implied Duty of Good Faith and Fair Dealing; Negligence; Unjust Enrichment; Breach of Warranty)<br><br>DEMAND FOR JURY TRIAL |

For its Complaint against Defendant Siemens Water Technologies Corp., Plaintiff North Clackamas County Water Commission alleges as follows:

## PARTIES

1.

Plaintiff North Clackamas County Water Commission ("Plaintiff" or the "Water Commission") is a joint water supply partnership among three municipal entities—the City of

Page 1 – COMPLAINT

Gladstone ("Gladstone"), Oak Lodge Water District ("Oak Lodge"), and Sunrise Water Authority ("Sunrise Water")—which owns and operates a water treatment plant (the "Plant") at 14275 S. Clackamas River Dr., Oregon City, Oregon 97045, Clackamas County.

2.

Defendant Siemens Water Technologies Corp. ("Defendant" or "Siemens") is a corporation organized under the laws of Massachusetts, with its principal place of business in Pennsylvania. Siemens is the successor to US Filter Wastewater Group ("US Filter" or, for purposes of efficiency, "Siemens" or "Defendant"), having acquired the US Filter assets and liabilities in 2004.

## JURISDICTION AND VENUE

3.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.

Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

## GENERAL ALLEGATIONS

5.

In the fall of 2003, the Water Commission sought to expand the Plant, which filters raw water from the Clackamas River into drinking water, which is then distributed throughout Clackamas County as facilitated by Oak Lodge, Gladstone, and Sunrise Water. The Plant expansion project included the purchase and installation of a new membrane filtration system. In October of 2003, the Water Commission distributed a notice inviting proposals ("RFP") for the procurement of a low pressure membrane filtration system.

/ / /

6.

In November of 2003, Siemens submitted a proposal to the Water Commission for the design, sale, assembly, installation and testing of the membrane filtration system. The Plant has built into its concrete floor a series of square basins with raw water feed pipes from the Clackamas River. The proposal from Siemens, in addition to the design, installation, training, and testing of the system, included the custom-designed filtration system that is attached to the feed pipes and actively filters the water. That equipment includes, pumps, compressors, tanks, piping, instrumentation, controls, and—critically—the filter membranes.

7.

The filter membranes are bundles of fibers—long and hollow extruded plastic tubes shaped like thin straws—that permit water to pass through but block out impurities. Clean water then passes through the end of the fiber into a pipe that leads to a potable water storage tank. A single bundle of the microfilaments is called a "module." The Plant, as described in more detail below, operates four water treatment basin cells, which altogether include 1,152 modules.

8.

The integrity of the fibers is central to the utility of the water treatment system. When a fiber breaks, raw water can flow through the fiber. When a single fiber breaks, the remedy is to have a technician manually stick a pin in the end of the broken filament. This process, called "pinning" is arduous, but is for most water treatment plants—based on typical fiber breakage rates—an infrequent activity. If a module demands a large number of pins, its flow rate and effectiveness can be acutely compromised. If a plant suffers systematic membrane failure, it can negatively impact water quality and create a public health risk.

9.

Because of the central importance of the integrity of the fibers of the membrane system, Siemens' November 2003 proposal to the Water Commission guaranteed the membrane life of its product.

10.

After reviewing the Siemens proposal and those submitted by other firms, the Water Commission entered into an agreement with Siemens for the supply of membrane filtration equipment. That agreement was amended on January 7, 2004 by letter agreement between the parties that, among other things, establishes the number of fiber breaks an entire "module" may suffer before being deemed defective (together, the RFP, Proposal, and Amendment are referred to as the "Contract," which is Exhibit A to this Complaint).

11.

Under the Contract, Siemens provided a "Guaranteed Membrane Life" of seven years. Siemens warranted that all materials furnished "shall be free from defects in design, materials, and workmanship."

12.

The Contract also required Siemens to draft shop drawings and specifications for the custom-designed filtration system that houses the membrane modules. The shop drawings established Siemens' plan for fabrication of the equipment, including (but not limited to) arrangement, layout, and dimensions of all components of the membrane units, spool drawings, internal piping and wiring, cross sections, internal details, structural details pumps, valves and a parts list. Siemens' drawings had to show sufficient engineering detail to connect equipment to wires, pipes, vents, drains, conduits, anchors, supports, and all other items required to make the membrane filtration system fully operational.

13.

The Contract required that Siemens include in its proposal the procedures required to locate and to repair a compromised membrane fiber and "the expected number of such events per year." At the time of its proposal, Siemens represented that for its membrane system the "typical average breakage rate expected is 0.1 fiber per module per year corresponding to less than 0.001% of all the fibers breaking in a single year." This representation was of central

importance in the RFP process, as the Water Commission expressly stated that its selection of system supplier depended on stated "life expectancy of membrane modules."

14.

In reliance on Siemens' representations, the Water Commission paid roughly $2,749,000 to Siemens for the membrane filtration system.

15.

In March of 2006, the Water Commission began using the Siemens membrane filtration system. From 2006 through 2010, the Siemens membrane filtration system had above average breakage rates. For example, in 2007, 2008 and 2009, the Plant experienced an average of roughly ten (10) fiber breaks per module per year.

16.

In 2011, it became clear to the Water Commission that Siemens' had failed to deliver an operable system. The Plant averaged fifty (50) fiber breaks per module, roughly five-hundred times the failures expected based on the representations by Siemens.

17.

The Contract provides a standard for measuring whether one of Siemens' modules is defective:

> If for any single membrane module, more than 50 of the fibers (~0.5%) have required repair by pinning in any 12 consecutive months or if more than 100 have required repairs over the life of the membrane module, then the ***module shall be considered defective***.

By the middle of 2011, more than 260 of the 1,152 modules Siemens sold to the Water Commission had over 100 fibers broken and repaired.

18.

Following the disastrous breakdown of the Siemens' product in 2011, the Water Commission complained to Siemens, stating that a significant number of the membranes were defective. Siemens acknowledged its obligation to the Water Commission in writing and

Page 5 – COMPLAINT

replaced 576 modules, half of the modules in the Plant. When Siemens replaced those modules, it provided what was purported to be a new and "improved" membrane technology. The new technology differed—according to Siemens—in that the fibers were constructed in the module by a newly-refined process. Siemens selected what it viewed as the "best performing" of the original membranes and grouped them together in the other half of the operating Plant basins. Moreover, Siemens modified the Plant intake system in an effort to resolve what it represented caused the breakdown of its product: pine needles entering the membranes.

19.

Following the above-described efforts, Siemens stated in a June 19, 2013 letter that it expected that "the modifications made at the plant will prevent pine needles from getting into the cells, thus the new S10V modules *will not experience this issue* and the pinning maintenance will be reduced."

20.

In reliance on the representation made by Siemens, the Water Commission refrained from further pursuing its complaints against Siemens and resumed operating the Plant.

21.

Siemens' representation that the Plant's problems would be resolved was false. Despite the replacement of roughly half the membranes in 2011 and the Plant modifications made by Siemens, in 2012, the Plant suffered an average of forty-five (45) fiber breaks per module, over *four-hundred times the failures expected based on the representations by Siemens*. In 2012—before the seven-year guaranteed life-span of the membrane modules ended—over 770 modules had more than 100 fibers broken. Within the guaranteed life-time of the modules, *over two-thirds of modules proved "defective" by Siemens' own measure.*

22.

In one year of operation, Siemens' "new" membranes have failed immediately. Of the 576 modules installed by Siemens in 2011, 118 modules have required fifty (50) or more fiber

repairs within a twelve-month period.  In other words, *one-fifth of the new modules have proven defective in the first year* by Siemens' own measure.

23.

Since it began using Siemens' system in 2006, the Water Commission has inserted, by hand, over 165,000 pins into broken fibers.  That extraordinary effort—likely one of the most extensive ever undertaken by a water company—was necessary to prevent a public health risk of impure water production.  The Water Commission's investment of man-hours in that project exceeds three-thousand hours and cost it in excess of $122,000.

24.

Replacement of the Siemens water filter system with a working design from another water filtration system design company will entail the replacement of custom-designed equipment and a retrofit of the Plant basins.

25.

Siemens has been on notice of the catastrophic failure of its membrane system.  Siemens has had representatives present and participating at least twice a year for each of the last six years while the Water Commission was pinning broken fibers.  In June of 2012, the Water Commission put Siemens on notice that—contrary to its 2011 representation that the Plant's issues would be resolved—the Plant was suffering extreme fiber integrity failure and that the "new" technology was failing rapidly.  Siemens formed a team to investigate the issue over a four month period and has concluded—wrongly—that the failures are not the result of its technology but rather the existence of "pine needles" in the Clackamas River.

**FIRST CLAIM FOR RELIEF**

(Breach of Contract)

26.

North Clackamas County Water Commission re-alleges and incorporates by reference herein paragraphs 1 through 25 above as if fully set forth herein.

27.

Under the Contract, Siemens is required to "design[], manufacture[], test[]," "supply, deliver, and assist with installation and start-up of a low pressure membrane system."

28.

The Water Commission has performed all of its obligations under the Contract, including but not limited to, timely paying Siemens the Contract price of $2,749,000.

29.

Siemens breached the Contract by designing, manufacturing, testing, and delivering to the Water Commission a filtration system that was overwhelmingly defective. Siemens' failure to deliver a non-defective water filtration system was not excusable or allowable under the provisions of the Contract.

30.

Siemens' delivery of membrane elements, the vast majority of which were defective, constitutes a total breach of the Contract.

31.

As a direct result of the foregoing breaches, the Water Commission has incurred and continues to incur direct damages currently estimated in excess of approximately $2,871,000.

**SECOND CLAIM FOR RELIEF**

(Breach of Implied Duty of Good Faith and Fair Dealing)

32.

North Clackamas County Water Commission re-alleges and incorporates by reference herein paragraphs 1 through 31 above as if fully set forth herein.

33.

Under the Contract, Siemens owed the Water Commission an implied duty of good faith and fair dealing. That duty required Siemens to refrain from conduct that might impair the Water Commission's ability to receive the benefits of the Contract or otherwise interfere with the

parties' reasonable expectations under the terms of the contract. Among other things, the Water Commission was entitled to expect Siemens would design, fabricate, manufacture, test, supply, and deliver the water filtration system in a prudent and workmanlike manner.

34.

Siemens breached its implied duty of good faith and fair dealing by, among other things, failing to properly design, fabricate, manufacture, test, supply, and deliver the water filtration system.

35.

Siemens' conduct defied the reasonable expectations of the parties, deprived the Water Commission of the benefit of its contract, and caused the filtration system failures that resulted in substantial damage to the Water Commission.

### THIRD CLAIM FOR RELIEF

(Negligence)

36.

North Clackamas County Water Commission re-alleges and incorporates by reference herein paragraphs 1 through 35 above as if fully set forth herein.

37.

Siemens knew that the Water Commission was relying on Siemens to design, fabricate, manufacture, test, supply, and deliver its water filtration system in a prudent and workmanlike manner. It was reasonably foreseeable to Siemens that any failure to do so on its part would cause harm to the Water Commission.

38.

Siemens failed to exercise reasonable care in its design, fabrication, manufacture, testing, supply, and delivery of its water filtration system. The membrane failures and associated damage to the Water Commission would not have occurred but for this negligent conduct.

///

39.

As a direct result of Siemens negligence, the Water Commission has incurred and will continue to incur damages in the form of property damage resulting from the membrane failures, reduced plant-life, lost productivity, the constant threat of water safety issues, labor-related expenses incurred as a result of the plant shutdowns, lost water production capacity and the related replacement costs, the waste of existing equipment and the retrofit of the Plant for a new filtration system, and other costs and expenses in an amount currently estimated in excess of $2,871,000.

## FOURTH CLAIM FOR RELIEF

(Unjust Enrichment)

40.

North Clackamas County Water Commission re-alleges and incorporates by reference herein paragraphs 1 through 39 above as if fully set forth herein.

41.

As described above, the Water Commission conferred benefits upon Siemens, including but not limited to, timely paying Siemens the Contract price of $2,749,000.

42.

Siemens did not design, manufacture, test, and deliver a non-defective water filtration system to the Water Commission.

43.

It would be unjust to allow Siemens to retain the benefits conferred by the Water Commission without requiring Siemens to provide the promised value in exchange for that benefit.

/ / /

/ / /

/ / /

44.

The Water Commission seeks damages from Siemens in the amount equal to the Contract price paid plus additional costs and damages suffered by the Water Commission currently estimated in excess of approximately $2,871,000.

**FIFTH CLAIM FOR RELIEF**

(Breach of Warranty)

45.

North Clackamas County Water Commission re-alleges and incorporates by reference herein paragraphs 1 through 44 above as if fully set forth herein.

46.

Under the Contract, Siemens warranted that its product had a "Guaranteed Membrane Life of 7 (seven) years."

47.

Siemens further warranted that "all materials furnished . . . shall be free from defects in design, materials and workmanship."

48.

The Contract provides a standard for measuring whether one of Siemens' modules is defective:

> If for any single membrane module, more than 50 of the fibers (~0.5%) have required repair by pinning in any 12 consecutive months or if more than 100 have required repairs over the life of the membrane module, then the ***module shall be considered defective***.

49.

Under the Siemens warranty, "if more than 2 membrane units require complete replacement due to failure within any 12 month period, the OWNER shall retain the option to require the replacement of all remaining membrane modules."

/ / /

50.

In 2011, the Water Commission had two-hundred and sixty-eight (268) membrane modules that totaled over 100 fiber repairs in their lifetime and were, therefore defective.  In 2012, the Water Commission had seven-hundred and seventy-four (774) membrane modules that totaled over 100 fiber repairs in their lifetime and were, therefore defective.

51.

Additionally, in 2012, within a year of their installation, the "new" technology modules installed by Siemens had one-hundred and eighteen (118) modules that required more than 50 fiber repairs in twelve months and were, therefore, defective.

52.

As described in detail above, Siemens has been on notice of the extent of the fiber breaks from their discovery as Siemens was present at and participated in each pinning.  Moreover, the Water Commission has notified Siemens of its view that the Plant is defective as of at least June 2012.

53.

Throughout the Guaranteed Membrane Life warranted by Siemens, the Water Commission has complied with its obligations under the Contract.

54.

Siemens has failed to compensate the Water Commission as required under the Contract warranty.

55.

As a direct result of the foregoing breaches, the Water Commission has incurred and continues to incur direct damages currently estimated in excess of approximately $2,871,000.

/ / /

/ / /

/ / /

**PRAYER FOR RELIEF**

WHEREFORE, the Water Commission prays for judgment and relief against Siemens, as follows:

1. For monetary damages currently estimated in excess of approximately $2,871,000;

2. For costs and disbursements; and

3. For such other relief as the Court deems just, proper, and equitable.

DATED: August 15, 2013.

        CABLE HUSTON BENEDICT HAAGENSEN & LLOYD LLP

        s/ Casey M. Nokes
        Clark I. Balfour, OSB No. 791529
        cbalfour@cablehuston.com
        Casey M. Nokes, OSB No. 076641
        cnokes@cablehuston.com

        Of Attorneys for Plaintiff North Clackamas County Water Commission